UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
JAYNE FISHER,

                                                                    Docket No.:

                                    Plaintiff,

                    -against-                          **COMPLAINT**

VILLAGE OF HEMPSTEAD, VILLAGE OF HEMPSTEAD
POLICE DEPARTMENT, VILLAGE OF HEMPSTEAD
POLICE CHIEF PAUL JOHNSON, individually and in his
official capacity, VILLAGE OF HEMPSTEAD POLICE        **Plaintiff Demands a**
OFFICER JACK GUEVREKIAN, individually and in his     **Trial by Jury**
official capacity,and VILLAGE OF HEMPSTEAD POLICE
OFFICER JOHN DOES #1-5, individually and in their official
capacities,

                                                    Defendants.
-------------------------------------------------------------------------------X

        Plaintiff, JAYNE FISHER, complaining of Defendants VILLAGE OF HEMPSTEAD,

VILLAGE OF HEMPSTEAD POLICE DEPARTMENT, VILLAGE OF HEMPSTEAD POLICE

CHIEF PAUL JOHNSON, individually and in his official capacity, VILLAGE OF HEMPSTEAD

POLICE OFFICER JACK GUEVREKIAN, individually and in his official capacity, and

VILLAGE OF HEMPSTEAD POLICE OFFICER JOHN DOES #1-5, individually and in their

official capacities (collectively, "Defendants"), by and through her attorneys, THE RUSSELL

FRIEDMAN LAW GROUP, LLP, respectfully alleges as follows:

## PRELIMINARY STATEMENT

        1.      Defendant Village of Hempstead Police Officer Jack Guevrekian (hereinafter, "PO

Guevrekian") is a police officer who has sworn to serve and protect the community. On or about

2010 through and including July 2019, using his status as a police officer, PO Guevrekian would

stalk, intimidate, threaten, sexually harass, and ultimately sexually assaulted Plaintiff JAYNE

FISHER (hereinafter, "Fisher" or "Plaintiff") at a parking lot located at or near Hilton Avenue and

1

Fulton Avenue in the Village of Hempstead, New York, in PO Guevrekian's, upon information and belief, personal vehicle.

2. The emotional and psychological damage to Plaintiff from the sexual assault cannot be overstated: it has been profound and lasting. Like many victims of sexual assault, due to a combination of trauma, fear, and shame, Plaintiff was initially reluctant to speak out about the horrendous and traumatic experience she suffered at the hands of Defendants. But Plaintiff came to realize she could not repress what had happened.

3. Plaintiff now brings this civil suit to recover compensatory, punitive, and emotional distress damages for this unconscionable, pernicious, and insidious sexual assault at the hands of PO Guevrekian, who acted under the umbrella of protection by law enforcement.

4. Plaintiff alleges that Defendants wantonly, recklessly, knowingly, and purposefully, acting individually and in conspiracy with each other and with other as yet unknown individuals, while acting under color of state law, intentionally and willfully subjected Plaintiff to, *inter alia*, sexual assault, false imprisonment, personal humiliation, and the intentional and negligent infliction of emotional distress.

5. Said unconstitutional and illegal conduct was known to Defendants and others who are government officials, elected officials, authorized decision makers, supervisors, and policy makers, and was accepted and supported as policy, practice, and custom.

6. Plaintiff also seeks punitive damages against the individual Defendants for their malicious, intentional, reckless, and callous indifference to Plaintiff's constitutional rights.

## **JURISDICTION AND VENUE**

7. Jurisdiction in this matter is invoked in accordance with 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(1)-(4).

2

8.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau, the actual place of employment of all of the Individual Defendants is Nassau County in the Eastern District of New York, and the Village of Hempstead is within the jurisdiction of the Eastern District of New York.  Additionally, Plaintiff resides within the County of Nassau in the Eastern District of New York.

**PARTIES**

9.      That at all times hereinafter mentioned, Plaintiff JAYNE FISHER is a U.S. Citizen and a resident of the County of Nassau, State of New York.

10.     Defendant VILLAGE OF HEMPSTEAD (hereinafter, "Hempstead") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York and is located within the County of Nassau.

11.     Defendant VILLAGE OF HEMPSTEAD POLICE DEPARTMENT (hereinafter, "HPD") is a subdivision and/or agency of Defendant Hempstead.

12.     Upon information and belief, at all relevant times described herein, Defendant Hempstead, by its agents and/or employees, operated, maintained, and controlled the HPD, including all officers thereof.

13.     Upon information and belief, Defendant VILLAGE OF HEMPSTEAD POLICE CHIEF PAUL JOHNSON (hereinafter, "Chief Johnson") is the police chief of the HPD who is being sued in his individual and official capacity and is an employee of Defendants Hempstead and HPD.

14.     Upon information and belief, Defendant VILLAGE OF HEMPSTEAD POLICE OFFICER JACK GUEVREKIAN (hereinafter, "PO Guevrekian") is a police officer who is being

sued in his individual and official capacity and is an employee of Defendants Hempstead and HPD. Upon information and belief, at all relevant times described herein, PO Guevrekian was acting under color of state law within the scope of his employment as a police officer employed by Defendant Hempstead, and works under the supervision, direction, and/or control of his supervisors in the HPD.

15. Upon information and belief, Defendant VILLAGE OF HEMPSTEAD POLICE OFFICER JOHN DOES #1-5 (hereinafter, "PO Does") are police officers who are being sued in their individual and official capacities and are employees of Defendants Hempstead and HPD. Upon information and belief, at all relevant times described herein, PO Does were acting under color of state law within the scope of their employment as police officers employed by Defendant Hempstead, and work under the supervision, direction, and/or control of their supervisors in the HPD.

## JURY DEMAND

16. Plaintiff hereby demands a trial by jury in this action.

## FACTUAL BACKGROUND

17. At all times relevant hereto, Plaintiff is a recovering drug addict. For years, in order to support her addiction, Plaintiff did engage in prostitution.

18. At all times relevant hereto, PO Guevrekian knew and was familiar with Plaintiff prior to the sexual assault complained of herein as PO Guevrekian, on many instances, sought to solicit sex from Plaintiff. However, Plaintiff always sought to avoid Defendant Guevrekian by either running away or hiding whenever she observed him nearby.

4

19.     PO Guevrekian knew that Plaintiff was a vulnerable individual who had trouble with the law in the past and could be easily manipulated, coerced, intimidated, and threatened with arrest through his status as a police officer.

20.     Commencing on or about 2010, PO Guevrekian would stalk Plaintiff and attempt to engage Plaintiff for the purposes of soliciting sex. Plaintiff did not reside in Hempstead and, on occasion, would visit her aunt who did live in Hempstead. It was during these visits that Defendant Guevrekian would seek out Plaintiff. PO Guevrekian would approach Plaintiff while he was on duty and in uniform and/or in plainclothes.

21.     Plaintiff would also visit her friends that lived near South Franklin Street and Elm Avenue in Hempstead. Similarly, Defendant Guevrekian would seek Plaintiff out and attempt to engage Plaintiff for the purposes of soliciting sex.

22.     Defendant Guevrekian would often tell Plaintiff that she "[had] a nice ass" and/or that she "[had] nice legs". Defendant Guevrekian was incessant with seeking Plaintiff whenever she was in Hempstead.

23.     Defendant Guevrekian's behavior towards Plaintiff progressively became more aggressive.

24.     On one occasion, Plaintiff was with a group of people in the parking lot behind the Terrace Avenue apartments in Hempstead. Defendant Guevrekian, while on duty, approached the group and ordered everyone but Plaintiff to leave. Plaintiff was wearing a skirt at the time. Defendant Guevrekian then ordered Plaintiff to sit on the curb and told her to spread her legs open. Plaintiff was terrified and believed that Defendant Guevrekian was going to rape her. Fortunately, Defendant Guevrekian was distracted by a resident in one of the apartments and Plaintiff ran away.

25.    Soon thereafter, on or about April 2019, Defendant Guevrekian arrested Plaintiff for possession. The arrest was in retaliation for Plaintiff always avoiding Defendant Guevrekian and running away from him. Plaintiff was taken to the precinct for processing. While at the precinct, Plaintiff requested to use the bathroom. Defendant Guevrekian followed Plaintiff to the bathroom and Plaintiff was forced to undress and use the bathroom in front of Defendant Guevrekian while he watched her.

26.    On or about July 2019, Defendant Guevrekian approached Plaintiff while she was walking towards Burger King on Hilton Avenue and Fulton Avenue in Hempstead, NY. Defendant Guevrekian, upon seeing Plaintiff, told her to get in the car otherwise Defendant Guevrekian stated that he would "lock your fucking black ass up".

27.    Plaintiff, under threat of arrest, entered Defendant Guevrekian's vehicle. Defendant Guevrekian was driving a black sedan. Defendant Guevrekian drove with Plaintiff to the Wells Fargo parking lot located at Hilton Avenue and Fulton Avenue in Hempstead, New York.

28.    While in the parking lot, Defendant Guevrekian forced Plaintiff, under threat of arrest, to give Defendant Guevrekian fellatio.

29.    PO Guevrekian was acting with the actual and/or apparent authority of the HPD when he ordered Plaintiff to give him fellatio or face the threat of arrest.

30.    The aforesaid actions of PO Guevrekian constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason.

31.    The aforesaid actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

32. After each horrific encounter, although Plaintiff wanted to go to alert someone, she was afraid that PO Guevrekian would be alerted that Plaintiff had reported Defendant Guevrekian's conduct and sexual assault, causing her to be susceptible to further assaults, further arrests, and/or other forms of retaliation at the hands of PO Guevrekian and/or others at HPD.

33. Due to the traumatic experience, Plaintiff suffers from nighttime terrors and wakes up screaming in the middle of the night, requiring her to seek help from various mental health providers and counselors.

34. Upon information and belief, at all times relevant hereto, due to the traumatic experience, Plaintiff continues to receive counseling services and assistance from multiple psychiatrists and/or other mental health providers and counselors.

35. In assaulting, battering, unlawfully detaining, falsely imprisoning, and sexually assaulting Plaintiff, PO Guevrekian acted maliciously, wantonly, recklessly, and/or in grossly negligent disregard of Plaintiff's rights.

36. Defendants Chief Johnson, Hempstead, and HPD knew of prior instances of misconduct on behalf of PO Guevrekian, and other HPD Officers, yet failed to take any action to prevent future instances of misconduct, essentially countenancing their behavior.

37. By failing to act, Defendants Chief Johnson, Hempstead, and HPD proximately caused the injuries to Plaintiff as alleged herein, as it was foreseeable that PO Guevrekian, and/or other HPD Officers, would continue to use their position as police officers to further their horrid and salacious acts.

38. Upon information and belief, Defendants Chief Johnson, Hempstead, and HPD failed to take any action to terminate PO Guevrekian's employment, contributing to the prurient environment within HPD.

**The Salacious Environment of the HPD**

39.     On information, PO Guevrekian, while employed as a police officer by the HPD, engaged in a continuous and ongoing course of salacious conduct and criminal wrongdoing throughout the Village of Hempstead.

40.     On information, PO Guevrekian, while employed as a police officer by the HPD, sexually assaulted numerous citizens within the Village of Hempstead, including but not limited to, citizens he came in contact with during his official duties as an HPD police officer.

41.     Upon information and belief, others within HPD similarly assaulted other citizens within the Village if Hempstead.

42.     Most of PO Guevrekian's victims of sexual assault have either been arrested personally by him in the past or had prior contact with other HPD Officers.

43.     Most of PO Guevrekian's victims had been arrested for drug and/or prostitution offenses in the past, and were particularly vulnerable due to their socioeconomic status and/or their status as criminal suspects and/or detainees.

44.     PO Guevrekian's ongoing course of salacious and criminal conduct was well known throughout the HPD, and the actual salacious and criminal conduct by PO Guevrekian and others was open and notorious within the HPD.

45.     It was known within the HPD that PO Guevrekian was a police officer who used his official position to sexually abuse and assault women with whom he came in contact within his official capacity as a police officer.

46.     Upon information and belief, because HPD failed to take any action regarding the known criminal conduct of others at HPD, PO Guevrekian and other HPD Officers continued to

engage in similar criminal conduct by using their status as police officers to sexually abuse and assault women with whom they came in contact within their official capacities as police officers.

47.     Chief Johnson, as Police Chief of the HPD, had actual knowledge of the aforementioned malfeasance and criminal conduct of PO Guevrekian and other HPD Officers and/or widespread allegations of such malfeasance.

48.     In point of fact, in or about October 2004, a complaint was filed with the Hempstead Police Department and the Nassau County District Attorney's office regarding Defendant Jack Guevrekian's lewd behavior. The October 2004 complaint detailed Jack Guevrekian's sexual assault on a female victim that had called 911 seeking assistance regarding a domestic violence incident.

49.     Defendant Jack Guevrekian, instead of protecting the female victim, proceeded to make inappropriate comments; asked the female victim to lift her shirt; and then assaulted the victim by rubbing his body against hers. Defendant Guevrekian returned the very next day to the female victim's home, in uniform, and proceeded to hug and kiss the victim and told her that he "would like to take her out sometime".

50.     Upon information, other female residents of the Village of Hempstead had similar encounters with PO Guevrekian.

51.     Moreover, Plaintiff is aware of other victims that, upon information and belief, Defendant Guevrekian similarly sexually assaulted. Defendants Hempstead, HPD, Chief Johnson, and PO Does were well aware of Defendant Guevrekian's conduct.

52.     Apart from the aforementioned victims, Ms. Carol McGuire, Ms. Jennilee Tooher, Ms. Kristen Wilke, and Ms. Regina Pruitte were similarly viciously assaulted by Defendant Guevrekian. Ms. McGuire, Ms. Tooher, Ms. Wilke, and Ms. Pruitte's assault and rape are the

subject of litigation. *See McGuire v. Village of Hempstead*, et al., 2:20-cv-02117 (JMA)(JMW); *Tooher v. Village of Hempstead, et al.*, 2:21-cv-04268 (AMD)(JMW); *Wilkie v. Village of Hempstead, et al.*, 2:22-cv-00920 (JMA)(JMW); *Pruitte v. Village of Hempstead, et al.*, 2:22-cv-03671 (GRB)(SIL).

53. That, despite his knowledge of PO Guevrekian's malfeasance and criminal conduct and/or widespread allegations of same, Chief Johnson failed and refused to adequately investigate PO Guevrekian's actions, acquiesced in PO Guevrekian's conduct, failed to take any remedial action against PO Guevrekian, allowed PO Guevrekian to remain employed as an officer with the HPD, was grossly negligent in his supervision of PO Guevrekian, and was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated by PO Guevrekian.

54. That the aforesaid actions or inactions by Chief Johnson constituted a deliberate indifference to the constitutional rights of the citizens HPD swore a duty to protect and serve and other citizens with whom PO Guevrekian came into contact in his official capacity as an officer with the HPD.

55. That the aforesaid actions or inactions by Chief Johnson countenanced the actions of PO Guevrekian and other HPD Officers who engaged in similar conduct described herein, creating an environment where salacious and criminal conduct within the HPD was not only tolerated but encouraged, constituting a deliberate indifference to the constitutional rights of the citizens HPD swore a duty to protect and serve.

56. Upon information and belief, upon hearing of the allegations set forth herein, Defendants Chief Johnson, Hempstead, and HPD failed to take any measures to remediate the

salacious environment within the HPD, which led to the constitutional rights of vulnerable citizens being violated for their prurient desires.

57.     As a result of the aforementioned, Plaintiff was subjected to bodily harm, extreme emotional distress and mental anguish, night terrors and nightmares, public humiliation, ridicule and scorn, severe injury to her reputation, loss of dignity, loss of her liberty, placed in grave fear of her safety and life, and lost time from her everyday pursuits.

58.     The events leading up to Plaintiff's sexual assault, including the sexual assault of the aforementioned mentioned victims, make clear the policy of Defendants Hempstead, Chief Johnson, and HPD (collectively "Municipal Defendants"), that their employee was engaged in predatory conduct resulting in the sexual assault of Plaintiff and other victims.

59.     Municipal Defendants' repeated failure to meaningfully respond to reports of criminality by Defendant PO Guevrekian enhances the risk that the criminal behavior will continue unabated and with knowledge by Defendant PO Guevrekian that no repercussions will be forthcoming.

60.     Municipal Defendants' failure to follow-up and/or make any meaningful attempt to investigate or forestall further incidents demonstrates deliberate indifference to Plaintiff Jayne Fisher's constitutional rights.

61.     The supervising officers of the HPD condone a custom, policy, and/or practice of willful disregard to the obvious risks posed to female residents of the Village of Hempstead.

62.     The patrol officers and supervising officers of HPD did not have the training and knowledge to recognize and respond properly to the imminent danger posed by Defendant PO Guevrekian.

63.     Municipal Defendants' inaction and failure to take corrective actions in response to the system wide failures regarding the reporting, investigating, and disciplining Defendant PO Guevrekian has sanctioned and tacitly authorized Defendant PO Guevrekian's criminal actions.

64.     There is a history of Municipal Defendants and their employees of mishandling crimes of violence against female residents of the Village of Hempstead, and these failures have frequently caused the deprivation of those individuals' constitutional rights. In 2014, Defendants were sued by N'Daya Lee. Ms. Lee's mother, Diane Parker-Reed, had been killed by her husband during a domestic violence incident. This was after a well-documented history of complaints and complete inaction of Defendants to protect Ms. Parker-Reed. Defendants have a long history of utter and complete failure in protecting and/or taking action against perpetrators of violence against women within their jurisdiction. *N'Daya Lee v. Inc. Village of Hempstead, et al*., 14-CV-2853 (ADS)(GRB).

65.     Defendants' systemic failures to investigate, discipline, and rout out criminal behavior within HPD is evident. These systemic failures have led to a custom, policy, and practice of Hempstead to tolerate, condone, and encourage criminal activity and constitutional violations, such as those alleged by Plaintiff herein, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of police misconduct.

66.     To date, Municipal Defendants have made no efforts to investigate and/or criminally charge Defendant PO Guevrekian. In point of fact, on information, there has been no Internal Affairs Unit investigation into Defendant PO Guevrekian's unlawful conduct.

## COUNT I
## VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS FOR UNLAWFUL IMPRISONMENT (§ 1983)
## (AGAINST PO GUEVREKIAN)

67.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

68.    That, on or about 2010 through July 2019, Plaintiff was intentionally and unlawfully detained by PO Guevrekian before, during, and after the sexual assault.

69.    The unlawful detention of Plaintiff by PO Guevrekian was conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of his employment by the HPD.

70.    Plaintiff was aware of her detention.

71.    Plaintiff did not consent to being detained.

72.    PO Guevrekian did not have any probable or reasonable cause to detain Plaintiff.

73.    Plaintiff's detention was not privileged as PO Guevrekian lacked probable or reasonable cause for all of her detention. In fact, no reasonable officer would agree that there was probable cause for Plaintiff's detention prior to, during, and/or after the sexual assaults.

74.    As a result of her illegal detention, Plaintiff's Fourth and Fourteenth Amendment rights were violated and Plaintiff was unlawfully deprived of her liberty without legal justification.

75.    As a proximate result of PO Guevrekian's intentional and malicious actions, Plaintiff was caused to be unlawfully seized, assaulted, battered, and sexually assaulted, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has

incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

**COUNT II**
**VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT**
**RIGHTS FOR UNLAWFUL FORCE (§ 1983)**
**(AGAINST PO GUEVREKIAN)**

76.     Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

77.     The unlawful detention and subsequent sexual assault of Plaintiff by PO Guevrekian was conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of his employment by the HPD.

78.     PO Guevrekian, with willful and malicious intent, using the actual and/or apparent authority of the HPD, violently sexually assaulted Plaintiff while he unlawfully detained her under color of state law.

79.     The aforesaid actions of PO Guevrekian constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason.

80.     PO Guevrekian's actions were intentionally, wanton indifferently, recklessly, grossly negligent, and/or negligently done to intimidate and did cause Plaintiff physical and emotional distress.

81.     The sexual assault that followed Plaintiff's unlawful detention was an abuse of power, constituted a seizure within the meaning of the Fourth Amendment, constituted a violation of bodily integrity for no legitimate purpose within the meaning of the Fourteenth Amendment, constituted a violation of her right to be free from unlawful force while detained pursuant to the

Fourth Amendment, and deprived Plaintiff of her liberty and right to be free from this type of unwanted physical contact.

82. The seizure, deprivation of Plaintiff's liberty, and violation of Plaintiff's bodily integrity was unreasonable and without due process of law, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

83. As a proximate result of PO Guevrekian's intentional and malicious actions, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

**COUNT III**
**VIOLATION OF PLAINTIFF'S FOURTH, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHTS/VIOLATING PLAINTIFF'S BODILY INTEGRITY (§ 1983)**
**(AGAINST PO GUEVREKIAN)**

84. Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

85. The harm to Plaintiff was foreseeable and a direct result of PO Guevrekian's conduct in unlawfully detaining and subsequently sexually assaulting Plaintiff without any legitimate basis or any other lawful justification.

86. PO Guevrekian acted in conscious disregard of a great risk of serious harm to Plaintiff by unlawfully detaining Plaintiff and subsequently sexually assaulting her, placing Plaintiff in substantial fear for her health and safety and causing physical and emotional injuries to Plaintiff.

87. By coercing Plaintiff into his vehicle using the actual and/or apparent authority of the HPD, under color of state law, and subsequently sexually assaulting Plaintiff, PO Guevrekian entered into a relationship with Plaintiff in which he created a dangerous situation that only PO Guevrekian could control.

88. PO Guevrekian's conduct was intentional, with wanton indifference, with deliberate indifference, recklessness, and/or gross negligence.

89. PO Guevrekian consciously disregarded a great risk that serious harm would result by unlawfully detaining Plaintiff under color of state law and the actual and/or apparent authority of the HPD, and placing Plaintiff in a dangerous situation that she otherwise would not have been subjected to but for Defendant's conduct.

90. PO Guevrekian was aware and/or it was reasonably foreseeable that his conduct would cause injuries to Plaintiff.

91. PO Guevrekian used his authority to create an opportunity that otherwise would not have existed for harm to occur.

92. PO Guevrekian's conduct in unlawfully detaining and subsequently sexually assaulting Plaintiff constitutes conduct that shocks the conscience and was without any lawful or legitimate basis.

93. PO Guevrekian acted intentionally, with wanton or deliberate indifference, recklessness, and/or gross negligence to Plaintiff's rights.

94.    The aforesaid actions of PO Guevrekian constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason in violation of Plaintiff's substantive due process rights guaranteed by the Fifth and Fourteenth Amendments.

95.    As a result of PO Guevrekian's willing, wanton, reckless, deliberately indifferent, and grossly negligent conduct, Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights were violated, and she was unlawfully subjected to a dangerous situation directly caused by Defendant's affirmative actions.

96.    As a proximate result of PO Guevrekian's intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

## COUNT IV
## VIOLATION OF PLAINTIFF'S FOURTH, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS FOR FAILURE TO PROTECT/INTERVENE (§ 1983) (AGAINST DEFENDANTS CHIEF JOHNSON, HEMPSTEAD, HPD, AND PO DOES #1-5)

97.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

98. Defendants knew that there was a strong likelihood of harm to Plaintiff but failed to take reasonable measures to intervene and prevent the unlawful conduct of PO Guevrekian, despite having an opportunity to do so.

99. Upon information and belief, Defendants were on notice of PO Guevrekian's propensity to use his status as a police officer to further his own sick and salacious purposes.

100. Chief Johnson, Hempstead, and HPD knew that PO Guevrekian had engaged in this conduct in the past while using the actual and/or apparent authority of the HPD to carry out his prurient desires.

101. Upon information and belief, Defendants were on notice of other HPD Officers' propensity to use their status as police officers to further their own sick and salacious purposes.

102. Despite having such knowledge, Defendants failed to take any remedial or preventative measures to deter PO Guevrekian and/or other HPD Officers from continuing to engage in official misconduct that violates the rights of the citizens they each swore to protect and serve.

103. Had Defendants, including Chief Johnson, intervened to stop the unlawful conduct of PO Guevrekian, Plaintiff would not have been subjected to the events described herein.

104. As a result of Defendants' failure to protect and failure to intervene, Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights were violated.

105. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special

damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

## COUNT V
## MONELL
## (AGAINST DEFENDANTS HEMPSTEAD AND HPD)

**Failure to Supervise and Failure to Train**

106.    Plaintiff repeats, realleges, and reiterates each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

107.    The sexual abuse of individuals with prior history of arrests by police officers, including PO Guevrekian, is and was foreseeable.

108.    Defendants Chief Johnson, Hempstead, and HPD were responsible for supervising, overseeing, and controlling their subordinates in the HPD, including PO Guevrekian.

109.    Defendants Chief Johnson, Hempstead, and HPD had an express and/or implied duty to provide a reasonably safe environment for their citizens, including Plaintiff. At a minimum, they had a duty to keep her from being sexually assaulted by their employees, including PO Guevrekian, which was foreseeable based upon his past instances of misconduct, which were known to Chief Johnson and other supervisors in the HPD.

110.    In fact, it was well known throughout the community that multiple HPD Officers, including PO Guevrekian, were using their actual and/or apparent authority to sexually assault vulnerable women who had prior contacts with the HPD.

111. Despite having this knowledge, Defendants Chief Johnson, Hempstead, and HPD failed to take any remedial measures to prevent foreseeable acts of sexual abuse by HPD Officers.

112. The countenancing of this behavior created an environment within the HPD wherein HPD Officers were allowed to continue with their salacious behavior, which led to the constitutional rights of vulnerable citizens, including Plaintiff, being violated for their prurient desires.

113. Defendants Chief Johnson, Hempstead, and HPD intentionally failed to adequately supervise, control, oversee, train, and/or monitor PO Guevrekian, who had a history of engaging in official misconduct, and failed to implement measures to prevent PO Guevrekian and other HPD Officers from conspiring with each other to cover up their official misconduct.

114. Defendants Chief Johnson, Hempstead, and HPD intentionally failed to adequately supervise, control, oversee, train, and/or monitor PO Guevrekian and other HPD Officers from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the constitutional rights of individual citizens, including Plaintiff.

115. Defendants Chief Johnson, Hempstead, and HPD negligently hired, retained, and/or supervised PO Guevrekian when they knew or should have known that he posed a threat of sexual abuse to individuals with prior histories of arrests and/or contact with the HPD.

116. Defendants Chief Johnson, Hempstead, and HPD knew or should have known of PO Guevrekian's propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries, given the knowledge of other instances of sexual abuse that predate July 2019.

117. Defendants Chief Johnson, Hempstead, and HPD owed a duty of care to all persons, including Plaintiff, who were likely to come into the influence of PO Guevrekian in his role as a

police officer, to ensure that PO Guevrekian did not abuse his authority as a police officer to injure citizens by falsely detaining, sexual assaulting, battering, and/or otherwise subjecting them to abuse for no lawful reason.

118.   At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

119.   Upon information and belief, Defendants Chief Johnson, Hempstead, and HPD were aware that there was a substantial likelihood that permitting PO Guevrekian to carry on his regular duties as a police officer would deprive the public of their civil rights, but failed to take adequate measures to resolve the wrong.

120.   In fact, upon hearing of the allegations, Defendants Chief Johnson, Hempstead, and HPD still failed to take any action and failed to terminate PO Guevrekian's employment or title as a police officer, essentially countenancing this behavior throughout HPD.

121.   Chief Johnson and other HPD Supervisors' failure and refusal to adequately investigate PO Guevrekian's actions, acquiescence in PO Guevrekian's conduct, failure to take any remedial action against PO Guevrekian, allowing PO Guevrekian to remain employed as an officer with the HPD, gross negligence in his supervision of PO Guevrekian, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by PO Guevrekian, subjects Chief Johnson to supervisory liability for the sexual assaults on Plaintiff.

122.   As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other

special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus attorney's fees.

**Custom, Policy, and Practice**

123. Upon information and belief, it was the custom, policy, and practice of Hempstead to tolerate, condone, and encourage constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of police misconduct.

124. Employees of the HPD, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

125. Employees of the HPD, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

126. By failing to supervise, train, and reprimand such HPD Officers, Hempstead caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

127. By maintaining a de facto policy of automatic indemnification, Hempstead caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

128. Upon information and belief, it was the custom, policy, and practice of Hempstead to blatantly ignore complaints and/or widespread allegations of sexual assault and/or other

malfeasance in order to shield the HPD from receiving any bad press that would be generated from an investigation of police misconduct.

129.    Upon information and belief, this custom, policy, and practice of Hempstead to ignore complaints and/or widespread allegations of sexual assault and other malfeasance created an environment where foreseeable constitutional violations by HPD Officers were rampant, including the violations of Plaintiff's constitutional rights by PO Guevrekian.

130.    Hempstead's failure to take action against HPD Officers involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

131.    As authorized representatives of Defendant Hempstead, the officers' conduct of illegal arrests or threats of arrest without probable or reasonable cause, searches and seizure of arrestees, threats of violence and acts of sexual assault, such as the Plaintiff, constituted a custom, policy, and practice which renders Defendant Hempstead liable to Plaintiff as a "Person" acting under the color of state law.

132.    These customs, policies, and practices, which were enforced by Defendant Chief Johnson were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

133.    Had Chief Johnson investigated serious complaints of sexual assault and/or widespread allegations of same, PO Guevrekian would not have been in a position to violate Plaintiff's constitutional rights.

134.    Hempstead is therefore liable for violations of Plaintiff's constitutional rights as caused by PO Guevrekian, as described in more detail in the foregoing paragraphs; and Plaintiff has suffered damages therefrom.

135.    That, by virtue of Chief Johnson and other HPD Supervisors' failure and refusal to adequately investigate PO Guevrekian's actions, acquiescence in PO Guevrekian's conduct, failure to take any remedial action against PO Guevrekian, allowing PO Guevrekian to remain employed as an officer with the HPD, gross negligence in their supervision of PO Guevrekian, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by PO Guevrekian, Hempstead, which employed these police officers and policymakers during the relevant time period, exhibited a de facto custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 US. 658 (1978).

136.    As a proximate result of Defendants' customs, policies, and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, Plaintiff was caused to be unlawfully seized, assaulted, battered, sexually assaulted, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00) plus attorney's fees.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands the following relief:

A.    Under the First Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

24

B.      Under the Second Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

C.      Under the Third Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

D.      Under the Fourth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees;

E.      Under the Fifth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus attorney's fees;

F.      For compensatory damages against all Defendants in an amount to be determined at trial but in no event less than TEN MILLION DOLLARS ($10,000,000.00); and

G.      Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       June 28, 2022

THE RUSSELL FRIEDMAN LAW GROUP, LLP
*Attorneys for Plaintiff, Regina Pruitte*

By:     */s/Charles Horn*
        Charles Horn
        400 Garden City Plaza, Suite 500
        Garden City, New York 11530
        Tel: 516.355.9696
        chorn@rfriedmanlaw.com